Good morning, your honors. May it please the court, my name is Emily Cass Mansfield on behalf of the defendant appellant Negus Thomas. This case is an appeal from the district court's denial of Mr. Thomas's reduction in sentence motion under section 3582 and the denial of his motion for resentencing under section 404 of the First Step Act. But fundamentally this case really boils down to one issue. Should Negus Thomas be incarcerated for the rest of his life? And is society better off or safer with Negus Thomas incarcerated for the rest of his life? And your honors, I submit that the answer to that is unequivocally no. But the district court's determination to the contrary and its denial of Mr. Thomas's motions was an abuse of discretion, one that this court should rectify. And the district court abused its discretion in four respects as outlined in the briefing. With respect to the reduction in sentence motion when it found that there were no extraordinary and compelling circumstances present and when it further found that a reduction was not appropriate. And with respect to the First Step Act motion under section 404, it abused its discretion when finding that resentencing was not appropriate and further reduction was not appropriate. But all of those issues intertwine to the fundamental question here of the appropriateness of release in light of the factors that are present that were outlined in the extensive briefing to the district court and in the multiple submissions, particularly regarding Mr. Thomas's extraordinary rehabilitation and the support he has in the community. So the district court, Judge Thompson, said he appeared to understand everything that you're saying, but he concluded that all of that was outweighed by the very serious nature of the offense here, very, very serious. Why can't he do that? Why is it an abuse of discretion to consider, on the one hand, all of the very forceful mitigating factors that you just outlined, but then say that it's outweighed, understanding the length of the term of imprisonment, but it's outweighed by the fact that he committed this very, very serious crime? Well, Your Honor, yes, it is an abuse of discretion standard, and it's not unfettered, and this court has said it's not a rubber stamp. And essentially what the district court's decision boiled down to was these crimes are too serious for relief. And in doing so, necessarily determined that at least for that district court, there is a categorical bar to relief in cases where the crimes are that serious, putting undue... So that's what you would ask us to infer from the record? Correct, Your Honor. By stating that when the district court put that much weight, and I believe undue weight, on one of the 3553A factors, namely the severity of the offense, to the exclusion of the others, and I... You know, given just our more recent case law of the last few years, I feel like the horse is out of the barn a little bit, and that we have given district court judges in this context a significant amount of discretion. And if they appear on the record to have weighed the different factors in the way that I just outlined and the way that you just, I think, acknowledged, then it's very hard for us to see or conclude that there was an abuse of discretion. Understood, Your Honor. And I certainly am not suggesting that... I don't recognize that an abuse of discretion is a high standard, and this would not be an uphill battle. Because I do think that there are some cases where the district court did not weigh the factors as I think the district court below purports to do in its decision. My argument is simply that the weight put on the severity far outweighed, and I think in an abuse of discretion way, the other factors that were critical. Well, you know, in terms of the seriousness of the crime, it was essentially an execution. They followed the victim and then fired multiple shots at him. But it wasn't just that. It was, as they were driving away, they hit a school bus and continued to sell drugs for another year or so. Mr. Thomas was the leader of a very substantial organization that employed a number of people, including a 14-year-old. So, I mean, on those facts, was it an abuse of discretion? I think it was, Your Honor, and certainly there's no suggestion that these were not serious crimes. And nowhere in the record is there any suggestion that Mr. Thomas does not dispute that these are serious crimes. But the severity of the offense is only one consideration, and there was a lengthy record below... But there may be cases where that one factor outweighs the others, and perhaps this is one of them. Certainly, Your Honor, but I think the essence of the decision, what we're left with is one would be hard-pressed to find what more a district court could ask for of a defendant in a situation such as this with these crimes to suggest that the severity of the offense is outweighed. And in doing so, that creates that categorical bar that I believe that the court's decision can be inferred to include. And the other thing that I think is missing from the district court's opinion is any discussion of unwarranted sentencing disparities. And we did alert the court in supplemental filing to at least one District of Connecticut case, which is in the appendix at page 354. That's United States v. Rios, where a district court in Connecticut reduced three life sentences to a term of, I believe it was 30 years, essentially a time served. It was a case of murder. It was very serious, gang affiliation, and with substantially similar circumstances to Mr. Thomas's regarding the rehabilitation he had undertaken over the last multiple decades. He could also apply again, right? I mean, he's only 47. What, he's done 20 years, roughly? He's done almost 25 years, Your Honor. Almost 25 years. I mean, he could apply again, right? In five years? In 10 years? Theoretically, yes, he could, Your Honor. But I don't know what more Negus Thomas could do to show that he is ready to be back in society. He has completely rehabilitated himself, and I'm not suggesting that that is the only factor that the district court can consider in determining extraordinary and compelling, because of course it cannot. There must be additional circumstances. But Mr. Thomas's significant health concerns, in conjunction with the rehabilitation, do make it appropriate for relief here, rather than having him wait an additional term of years to showcase the already extraordinary rehabilitation that he's already undertaken. To show that not only is he no longer a threat to society, but he would actually be an asset to society, and I think that is well briefed below. I see my time is concluding. I will reserve the rest for rebuttal. Thank you very much.  We'll hear from the government. Good morning, Your Honors, and may it please the court, Robert Ruff for the United States. The district court, Judge Thompson, did not, in the government's view, abuse his discretion in denying the motion for a sentence reduction here, whether under the Compassionate Relief Statute or the First Step Act. The grounds underlying both of those motions were essentially the same, namely health factors, most principally a stroke, COVID-19, and Mr. Thomas's rehabilitation efforts, and I think his factual rehabilitation to a large extent. The district court's opinion, I think, reflects that Judge Thompson appropriately considered all the factors that were raised, as well as the seriousness of the offense, and it was Judge Thompson's view that weighing all these factors, while the factor that he had put the most weight on at the time of sentencing, which was protecting the public, was now less important in light of Mr. Thomas's rehabilitation, which the court did commend, in his opinion, and the government commended as well. Judge Thompson's view was that the seriousness of the offense, and it's really perhaps the most serious offense under our laws, was now the most important factor, and that that factor in the court's work decisively outweighed the other factors. Your adversary poses the question, what more could a judge ask, given these crimes, that would justify compassionate release or action under the First Step Act? Your Honor, I'd have to… The crimes are terrible. Of course. She's saying, but everything else goes the other way. I'm not sure everything else does go the other way, Your Honor. The court did note, as far as the need to protect the public, that Judge Thompson disagreed with whether the need to protect the public had totally dissipated. The defense's argument was that the rehabilitation facts show that that factor is essentially off the table. Judge Thompson disagreed with that and said he couldn't quite conclude that there was no longer any need to protect the public. So I'm not sure it's every factor, but he was very clear that the seriousness of the offense was the driving factor under his decision. And I think it would be within the district court's discretion to conclude, under the facts here, that there is nothing else that could be done, at least as the facts stand today. And I think that's an important consideration. I would respectfully disagree with the framing of the question that this motion is about whether Mr. Thomas should ever get consideration. For instance, should he ever get a commutation some years down the road? That's not really the question that's framed. The question framed for the district court was, on the facts as they exist today, on the motion that was filed, is relief appropriate? And the district court has a lot of discretion to consider what factors matter the most. Does the law permit a judge to say this one factor, the seriousness of the crime, outweighs everything else? And even though everything else would weigh in favor of granting the motion, is it appropriate or is it proper for the court to say, I think this first one is so far outweighs the others that I'm going to deny the motion? Does the law allow that? Yes, absolutely, Your Honor. And I think that in a case like this, when you're talking about first-degree murder and, as Your Honor noted, an accompanying very serious drug crime, that that may be true in more cases than not. That when you're talking about an offense for which some statutes, not the drive-by murder statute, but some federal homicide statutes prescribe mandatory life sentences. And so I think that fact alone could weigh in a court's mind that, you know, absent something really extraordinary, that a life sentence is appropriate in a first-degree murder case. And I think Judge Thompson, having presided over the trial in this case, having sentenced Mr. Thomas as an initial matter, and having considered the sentence he imposed several times on remand, Judge Thompson is a very careful, very thoughtful judge who reviews the record carefully, and he's made the same ruling, in essence, over and over again. And I think it's within his discretion to conclude that the seriousness of the offense is what supports that decision. So we shouldn't – I take it what you're suggesting is that we shouldn't view this as a form of a categorical bar, that is that certain crimes are off the table or ought to be off the table when it comes to compassionate release or the First Step Act. I might have just missed – my view is it should not be viewed as a categorical bar. It isn't, and I don't think that that was the court's judgment in this case. I just wasn't sure if I heard the court correctly. No, you heard me correctly. No, I don't think it's a categorical bar. There are cases that have granted these motions, even where there was a life sentence, and there are also murder cases, right? Yes, absolutely, Your Honor. Numerous cases in Connecticut, as a matter of fact. And I think even the fact that two district judges viewing the same exact facts in sort of an alternate universe could reach different conclusions. That happens all the time, and I don't think that makes it an abuse of discretion, even if it were true – and I'm not sure that it is – but that Judge Thompson were sitting in some very tiny minority, and every other district judge in the District of Connecticut would view the case differently. I don't think it's an abuse of discretion for him to weigh the factors as he did. So you could have – to go back to your friend's argument – you could have two very similarly situated incarcerated individuals, and one could appear in front of Judge Thompson and get one result by way of compassionate release, and another in the District of Connecticut could get a very different outcome and get release. It can happen, Your Honor, and I'm sure, as Your Honors know, it can happen. It varies across districts. It varies within districts. You could even have a case where it's a multi-defendant case that, for some reason or another, some defendants get reassigned to a different judge who has a different view of what the appropriate sentence is. And there's always arguments about – you know, it's something the court – it's good for the court to consider what other – is happening in similar cases, but it's not outside the court's discretion to say, you know, I respectfully disagree even if the facts were exactly aligned. And here in particular, I think you mentioned this, Judge Thompson did preside over a trial? He did, Your Honor. It was a trial. It was a long time ago. But he presided over that trial. He was the one who received the motion from Mr. Thomas for a new trial that attached a fraudulent recantation of one of the government's key witnesses that Mr. Thomas procured after the jury returned its verdict. He presided over the sentencing. He presided over two Booker-related remands. He presided over two habeas motions, and now this motion. So he's more familiar with the case than anyone involved, save perhaps Mr. Thomas. Your Honor, for all those reasons, the government submits that Judge Thompson did not abuse his discretion in denying these motions and that his order should be affirmed. Thank you very much. Will there be some rebuttal? Thank you, Your Honors. I'd like to start where the government concluded because Judge Thompson did preside over this trial in 2003 and presided over the sentencing in 2003 and presided over a resentencing in 2014 and another resentencing in 2017. And the question at each stage was, who was Negus Thomas in 2001 and 2002 when he committed these crimes and in 2003 when he sentenced? The question before this court has never, excuse me, before the district court had never been, who is Negus Thomas in 2024 when this motion was decided or 2020 when it was filed or even 2025 as I stand before this court today? That is a far cry from the person that he was, the 24-year-old kid in 2002 when this crime was committed. And Negus Thomas would be the first person to tell you that he has matured, he has aged, and he has come to terms with the incredible, incredible impact negatively that he had on his community and his family and the victim's family. The court below was asked really to answer the question of, does Negus Thomas deserve to be released? And yes, there may be an opportunity in the future. He relied fairly heavily on his medical condition. Correct, Your Honor. But he did have a stroke, but he seems to have recovered nicely from it and he has high cholesterol like most of the people I know and he has hypertension like a lot of people in prison. So on that score, there doesn't seem to be anything really out of the ordinary. Well, Your Honor, I see my time is concluding, but if I may respond. Thankfully, Mr. Thomas did recover better than could have been anticipated when he initially had his very serious stroke in July of 2020. Yes, there are still lingering effects. It is not a day-to-day impact to the extent that he can't take care of himself, so I'm certainly not suggesting that. But the fact that he has recovered does not negate the fact that he was incarcerated, he had a stroke, and he had to recover during the height of the pandemic essentially in isolation from a very serious, very traumatic medical condition that had him fearing for his life. And at the time when the pandemic was so heightened, there was a lot of medical information out there that COVID, someone who had had a stroke and then contracted COVID was much more likely to pass away from COVID or to have a second stroke. And thankfully, neither of those things have happened for Mr. Thomas, but that does not negate the concerns. I'm sorry, Your Honor. That does not negate the fear and the trauma of living with that throughout these years. If we were just to agree with you and set it back, would Judge Thompson be required to review the record, the extant record, as it was when he first denied the motion for compassionate release, or would he be able to view sort of the current state of things? I believe he could review the current state of things. I think this would essentially become almost like a resentencing at which the court could take into consideration changes in the facts and the law. So I do believe. So presumably, I think the pandemic-related or COVID-related issues have somewhat dissipated. Let's knock on wood. The stroke, as you said, and as Justice Jacobs indicated, has had some lingering effects, but he's recovering. Thank goodness for that. And things have gotten, in a sense, in terms of the conditions, presumably better, no? They have, Your Honor. And after the initial filing of this motion in 2020, we have filed multiple supplements up until I believe late 2021 or even early 2022, which updated the court not only about the status of COVID but also Mr. Thomas's medical condition. So the court was, I will be candid, the court was well aware that Mr. Thomas had recovered better than expected at the time of his stroke. And certainly I think we're all aware that the pandemic-related concerns are less now than they were in 2020 when this motion was initially filed. But my argument is simply it doesn't erase the last couple of years, and that fear and that trauma and those very real medical concerns that Mr. Thomas underwent throughout those years is not necessarily negated by the fact that we are in a better position today and certainly can be used as an extraordinary and compelling circumstance because the court has at its discretion anything available to it that it deems to be extraordinary and compelling. Of course, rehabilitation alone is not. But with the extraordinary rehabilitation that Mr. Thomas has undertaken, plus the very real medical concerns and the very real trauma he suffered in prison because of that, certainly equal extraordinary and compelling circumstances in this case. Thank you very much. Thank you, Your Honor. Very well argued on both sides. We appreciate it. We'll, of course, reserve the decision.